CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 1 2 2006

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **BRIAN K. LESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:05cv00303** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) **By:** | **Hon. Michael F. Urbanski** |
| **Commissioner of Social Security,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM OPINION

Plaintiff Brian K. Lester ("Lester") brought this action for review of the decision of the Commissioner of Social Security denying his claim for child's supplemental security income ("SSI"), and subsequently, his claim for adult's SSI,[1] under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on defendant's motion for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the administrative law judge's ("ALJ's") decision is amply supported by evidence in the record, it must be affirmed.

### I

Plaintiff was born on January 1, 1981, and completed the ninth grade. (Administrative Record, hereinafter "R." at 28, 38, 747, 772, 824) Plaintiff filed an application for child's SSI on March 25, 1998, alleging disability since birth due to morbid obesity, asthma, shortness of breath, sleep apnea, high blood pressure, lumbar back pain, foot pain, depressed mood and

---

[1] Plaintiff's claim for adult SSI is for a closed period, from January 1, 1999 through April 30, 2001.

diabetes. (R. 25) The application was denied initially and upon reconsideration, and an administrative hearing was held on May 12, 1999. (R. 25, 738-67) On May 24, 1999, the ALJ issued a decision denying plaintiff's claim for benefits. (R. 25) After seeking administrative review, plaintiff's case was remanded to the Commissioner with instructions to hold a new hearing. (R. 25)

A new hearing was held on September 18, 2000, and the claim was again denied in a decision issued by the ALJ on March 15, 2001. (R. 59-78, 768-817) Plaintiff then filed a subsequent claim under Title XVI on August 13, 2001, which received a favorable determination by the Agency, with an onset of disability granted as of May 1, 2001. (R. 25)

Plaintiff sought a review of the March 15, 2001 decision denying his claim for benefits, and the matter was remanded to the Commissioner for further proceedings on June 20, 2003. (R. 25) Pursuant to the remand Order, a hearing was held on October 6, 2003 to consider the issue of disability from March 25, 1998 through April 30, 2001. (R. 25, 818-70) On March 22, 2004, the ALJ determined that plaintiff was not disabled at any time from his alleged onset date through the date he attained age eighteen (18) on January 1, 1999. (R. 39) The ALJ further determined that Lester retained the residual functional capacity ("RFC") to perform a narrowed range of sedentary work from January 1, 1999 through April 30, 2001, which included lifting fewer than ten (10) pounds frequently and sitting throughout the workday with the option to sit or stand on occasion. (R. 39)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on March 16, 2005, when the Appeals Council denied plaintiff's request for review. (R. 14-16; see R. 2, n.1) Plaintiff then filed this action challenging the Commissioner's decision

2

denying both his claim for child's SSI benefits and his claim for adult's SSI benefits for the period January 1, 1999 to April 30, 2001.

## II

Plaintiff first argues the ALJ erred in denying his child's SSI benefits. Plaintiff alleges he could not perform up to the level of his peers at school, he was excluded from athletic activities, he could not meet his class schedule, and finally, he could not appropriately care for himself. Based on these limitations, plaintiff argues that he meets or functionally equals a listing.

Plaintiff also claims to meet the disability requirements for adult's SSI during the period in question. Plaintiff asserts his impairments rise to listing-level severity. Lester claims the ALJ failed to properly consider his obesity, which puts a strain on his back and limits his ability to ambulate, and he contends that his condition is further complicated by his leg injury and respiratory problems. Plaintiff also argues that his residual functional capacity assessment performed by state agency physicians was completely unrealistic, and that the ALJ had no basis on which to discredit his testimony as to his physical limitations.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

3

### III

The regulations provide a three-step analysis for determining whether a child is eligible for child's SSI on the basis of disability. 20 C.F.R. § 416.924. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the Commissioner must determine whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence is defined as impairment(s) of listing-level severity; for example, plaintiff's impairment(s) must result in "marked" limitations in two domains of functioning, or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).[2] The six relevant domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ properly followed the three-step sequential evaluation process. (R. 26-30) There is no issue as regards steps one and two, as Lester has not engaged in substantial gainful activity, and the ALJ determined that his impairments, including hypertension, sleep apnea, left ankle injury residuals, a lower back condition, and depression, qualify as severe impairments. (R. 29)

---

[2] 20 C.F.R. § 416.926a(e)(2)(i) defines "marked" limitation as "more than moderate" but "less than extreme." Extreme limitation is defined as "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

4

As regards step three, plaintiff claims that Listing 9.09, Obesity, deleted from the regulations effective October 25, 1999, applies to this case. (Pl.'s Br. 3-4) Prior to October 25, 1999, the Social Security Administration ("SSA") recognized obesity as a separate listing under § 9.09. However, Listing 9.09 was deleted with the advent of the Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1). In response to public comments concerning the deletion of § 9.09, the SSA added paragraphs to the existing musculoskeletal, respiratory and cardiovascular body system listings, outlining the potential effects obesity has in causing or contributing to impairments in those body systems.[3] 64 Fed. Reg. 46122.

The SSA then issued Social Security Ruling ("SSR") 00-3p on May 15, 2000 to provide guidance on the evaluation of disability claims involving obesity following the deletion of Listing 9.09. SSR 00-3p. Social Security Ruling 02-1p, which was issued by the SSA on September 12, 2002 and supercedes Ruling 00-3p, clearly states that pursuant to the general policy with respect to listing changes, the final rules deleting Listing 9.09 apply to claims filed prior to October 25, 1999 that are awaiting initial determination, pending appeal at any level of

---

[3] The paragraph reads:

Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the [musculoskeletal, respiratory or cardiovascular] system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with [musculoskeletal, respiratory or cardiovascular] impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app. 1, Listings 1.00Q, 3.00I, 4.00F.

the administrative review process, or pending appeal to the court as of that date. On October 25, 1999, plaintiff's claim was still in the midst of the administrative review and appeals process. Thus, according to SSA policy, the revised rules deleting Listing 9.09 would apply to the plaintiff in this case.

A number of district courts have questioned whether applying these revised rules to claims such as Lester's, as required by SSA policy, constitutes retroactive rulemaking, and whether the SSA has the authority to enact rules that apply retroactively. Compare Branson v. Barnhart, No. 01-1372, 2005 U.S. Dist. LEXIS 36945, at *8 (E.D. Pa. Dec. 29, 2005) ("I find persuasive those cases which reason that the Administration does not have the authority to engage in retroactive rulemaking."); and Rogers v. Barnhart, No. 01cv4428, 2003 U.S. Dist. LEXIS 18152, at *8 (E.D. Pa. Sept. 17, 2003) (finding the SSA lacks the authority to apply the § 9.09 deletion retroactively); and Portlock v. Barnhart, 208 F. Supp. 2d 451 (D. Del. 2002) (concluding the revised regulations cannot be applied retroactively); and Kokal v. Massanari, 163 F. Supp. 2d 1122, 1134 (N.D. Cal. 2001) (holding without congressional authority, the application of the new rules to cases like plaintiff's would be unfairly retroactive); with Glenn v. Massanari, No. 00-4184, 2001 U.S. Dist. LEXIS 13496, at *7 (E.D. Pa. Aug. 27, 2001) ("In considering the appeal, the court must consider Listing 9.09 as having been deleted, even if it still had been part of the regulations at the time the ALJ made his decision."); and Havens v. Massanari, No. 99-1008MLB, 2001 U.S. Dist. LEXIS 9009, at *4 (D. Kan. May 9, 2001) (adopting a Report and Recommendation in which the magistrate judge held the SSA made its intentions clear in SSR 00-3p and the new listing applies with retroactive effect); and Wooten v. Apfel, 108 F. Supp. 2d 921 (E.D. Tenn. May 19, 2000) (adopting a Report and Recommendation

in which the magistrate judge found that the new rules deleting § 9.09 have a prospective effect and therefore apply to cases pending at the time the rules took effect in October, 1999).

Lester cites <u>Cherry v. Barnhart</u>, 125 Fed. Appx. 913 (10th Cir. 2005), in support of his proposition that Listing 9.09 applies to this case. However, in this unpublished opinion, the Tenth Circuit does not speak directly to the issue at hand: namely, whether the deletion of Listing 9.09 can be applied to claims pending appeal on October 25, 1999. Instead, the issue before the Tenth Circuit was a review of the district court's decision denying an award of Equal Access to Justice Act fees to a plaintiff whose disability claim was remanded to the Commissioner for further proceedings under Listing 9.09, after a magistrate judge determined that Congress did not give the SSA power to apply the § 9.09 deletion retroactively.

More pertinent to the issue at hand is the district court's opinion in <u>Cherry v. Barnhart</u>, 327 F. Supp. 2d 1347 (N.D. Okla. 2004), which is the foundation of the Tenth Circuit case upon which plaintiff relies. The magistrate judge in <u>Cherry</u> held that the Commissioner failed to establish that Congress expressly authorized the SSA to promulgate a legislative rule with a retroactive effect. As such, the court found the SSA had no power to apply the revised rules to cases still pending appeal on October 25, 1999, and held plaintiff's claim had been improperly evaluated under the revised listings.

The magistrate judge in <u>Cherry</u> also held that because the deletion of § 9.09 resulted in a substantive change in the SSA's determination of disability, which attached new legal consequences for individuals with claims pending initial determination or administrative or judicial review prior to October 25, 1999, the effect was "retroactive." <u>Cherry</u>, 327 F. Supp. 2d at 1358. The court found the relevant act in determining whether a rule change impaired the rights a claimant possessed when he "acted" to be the filing of the claim. <u>Id.</u> at 1358.

The magistrate judge in <u>Cherry</u> followed the precedent of <u>Nash v. Apfel</u>, 215 F.3d 1337, 2000 WL 710491 (10th Cir. 2002) (unpublished table decision). In <u>Nash</u>, the Tenth Circuit held that a rule changing the law can be retroactively applied only if the agency clearly intended the rule to have a retroactive effect, and if Congress expressly authorized retroactive rulemaking. <u>Nash</u>, 2000 WL 710491 at *2. The court found that the Commissioner failed to show an intention to apply the 1999 deletion of Listing 9.09 retroactively. <u>Id.</u> at *2. The court never reached the issue of whether Congress expressly authorized SSA's retroactive rulemaking. <u>See</u> <u>Cherry v. Barnhart</u>, 327 F. Supp. 2d 1347, 1355 n.6 (N.D. Okla. 2004).

While the <u>Cherry</u> court is one of many district courts to debate the applicability of the revised rules to claims pending appeal in October of 1999, few circuit courts have rendered opinions on the issue. In <u>Combs v. Commissioner of Social Security</u>, 400 F.3d 353 (6th Cir. 2005), the Sixth Circuit held that individuals who submitted claims prior to the October 25, 1999 deletion must be given the benefit of the obesity rules in effect at the time their claims were filed. <u>Id.</u> at 360. However, the court subsequently vacated and stayed that decision pending rehearing <u>en banc</u>. <u>Combs v. Comm'r of Soc. Sec.</u>, No. 04-5275, 2005 U.S. App. LEXIS 14514 (6th Cir. July 15, 2005). As of this date, the Sixth Circuit has rendered no opinion following rehearing.

In <u>Barthelemy v. Barnhart</u>, 107 Fed. Appx. 689 (7th Cir. 2004), the Seventh Circuit took the opposite approach and applied the revised rules deleting § 9.09 to plaintiff's pending claim. The court decided in an unpublished opinion that the "new regulations apply retroactively to all disability claims filed before the effective date, including those awaiting initial determination or pending judicial appeal." <u>Id.</u> at 693 (citing 65 Fed. Reg. 31039 (SSR 00-3p)). The Seventh Circuit did not provide any analysis on the retroactive nature of the revised rules, or the SSA's authority to engage in retroactive rulemaking.

The undersigned is not aware of any case in which the Fourth Circuit specifically addresses this issue. Indeed, only two district courts within the Fourth Circuit have rendered opinions dealing with the applicability of Listing 9.09 to claims still pending appeal on October 25, 1999 and filed prior to that date. In Fulbright v. Apfel, 114 F. Supp. 2d 465 (W.D.N.C. 2000), the court held that the "removal of former Listing 9.09 and subsequent revision to the other listing sections is the law in effect for this case." Id. at 476 (citing Landgraf v. USI Film Products, 511 U.S. 244, 273-77 (1994)). Without further analysis, the court concluded "[t]herefore, the ALJ did not err in failing to find the Plaintiff's height and weight alone as a basis for disability." Id. at 475.

Similarly, the district court in Parker v. Massanari, No. 3:00cv420, 2001 U.S. Dist. LEXIS 11711 (E.D. Va. Aug. 10, 2001), held that "[a]lthough § 9.09 was in effect when the final administrative decision was rendered, the Court is required to apply the law in effect at the time of its decision." Id. at *21. The Parker court juxtaposed the holding in Nash, that a rule changing the law is retroactively applied only if Congress expressly authorized retroactive rulemaking, with the Supreme Court's holding in Bradley v. Richmond School Board, 416 U.S. 696, 711 (1974), in which the court required retroactivity "unless doing so would result in manifest injustice." Parker, 2001 U.S. Dist. LEXIS 11711 at *21 n.10. The court determined that no manifest injustice would result in Parker's case. Id. at *14. The court also discredited the Nash decision because of Nash's failure to cite to SSR 00-3p, published a mere two weeks before Nash was decided. Social Security Ruling 00-3p clearly states the rules deleting Listing 9.09 apply to all claims filed before October 25, 1999 and still pending initial determination or appeal at any level of the administrative process as of that date. Id. at *21 n.10.

9

Clearly, there is an ongoing judicial debate regarding the applicability of Listing 9.09 to claims filed prior to October 25, 1999 but still pending initial determination or appeal at that time. The Tenth Circuit in <u>Nash</u> found that the Commissioner failed to establish SSA's intent to apply the rules retroactively. <u>Nash</u>, 2000 WL 710491 at *2. However, since that time, the SSA has issued two rulings which establish an intent to retroactively apply the revised rules deleting § 9.09. Social Security Rulings 00-3p and 02-1p state that pursuant to the general policy with respect to listing changes, the final rules deleting Listing 9.09 apply to claims filed before October 25, 1999 that are pending initial determination or appeal at any level of the administrative review process or to the court. The intent of the SSA to apply the revised rules to cases such as Lester's is now apparent.

Further, debate rages as to whether the elimination of the obesity listing even has retroactive effect.[4] Courts in <u>Cherry</u> and <u>Kokal</u> considered the elimination of the obesity listing to have "a retroactive effect on a substantive right of the plaintiff." <u>Kokal v. Massanari</u>, 163 F. Supp. 2d 1122, 1130-31 (N.D. Cal. 2001); <u>see also</u> <u>Cherry v. Barnhart</u>, 327 F. Supp. 2d 1347, 1358 (N.D. Okla. 2004) ("The Court finds that the deletion of Listing 9.09 resulted in a substantive change in the SSA's determination of disability which attached 'new legal consequences' for individuals with claims pending initial determination or administrative or judicial review prior to the effective date of the final rule."). Other courts have reached the opposite conclusion. <u>See</u>, <u>e.g.</u>, <u>Keenan v. Barnhart</u>, 375 F. Supp. 2d 1335, 1342-45 (W.D. Okla. 2003) (holding the application of the revised rules has a prospective effect). Following the Supreme Court's analysis in <u>Landgraf v. USI Film Products</u>, 511 U.S. 244 (1994), the <u>Keenan</u>

───────────────

[4] The Commissioner in this case argues that "[t]hese final rules have only a prospective effect," as explained in the Federal Register. (Def.'s Br. 17; <u>see also</u> 64 Fed. Reg. 46127)

court focused on whether applying the revised rules would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. Keenan, 375 F. Supp. 2d at 1343. The Keenan court concluded that, to the extent filing a claim for Social Security benefits is an "act" as that term is used in Landgraf, plaintiff's lack of any substantive right to SSI benefits makes it clear that revised medical criteria can be applied to pending cases without "impair[ing] rights a party possessed when he acted." Keenan, 375 F. Supp. 2d at 1343 (quoting Landgraf, 511 U.S. at 280). Further, the court reasoned that deletion of the obesity listing did not "increase a party's liability for past conduct," nor did it impose new duties to a transaction already completed. Keenan, 375 F. Supp 2d at 1343 (quoting Landgraf, 511 U.S. at 280). The court concluded: "[a] claimant becoming disabled is neither conduct nor a transaction, and with no substantive right to benefits, application of revised criteria to a pending claim is not retroactive under the Landgraf analysis." Keenan, 375 F. Supp. 2d at 1343. The undersigned finds this analysis sound.

Additionally, while the Fourth Circuit has not directly addressed the question of retroactivity, district courts within this circuit have found that the obesity listing does not apply to cases awaiting initial determination or pending appeal on October 25, 1999. The two district courts within the Fourth Circuit that have encountered a similar situation to the case at bar have applied the rules deleting Listing 9.09 to cases like Lester's. See Parker, 2001 U.S. Dist. LEXIS 11711; Fulbright, 114 F. Supp. 2d 465. Plaintiff offers no reason to depart from the conclusion reached by these district courts. For these reasons, the undersigned finds that Listing 9.09 has no bearing on plaintiff's claim in this case.

Even if Listing 9.09 were to be applied to this case, the end result would be the same. See Rogers v. Barnhart, No. 01cv4428, 2003 U.S. Dist. LEXIS 18152, at *8 (E.D. Pa. Sept. 17,

11

2003) (finding the SSA lacks authority to apply the § 9.09 deletion retroactively, but holding

remand of the case unnecessary because the ALJ's determination that plaintiff is not disabled

pursuant to Listing 9.09 was supported by substantial evidence). On May 24, 1999, several

months prior to the deletion of Listing 9.09 on October 25, 1999, the ALJ found that Lester did

not have impairments that singly, or in combination, met or equaled any listing. (R. 54) The

ALJ specifically noted that although plaintiff met the height and weight requirements of Listing

9.09, he did not meet all the criteria for a determination of disability.[5] (R. 54) Substantial

evidence supports this finding. Thus, even if Listing 9.09 applies to this case, plaintiff has not

demonstrated that his condition satisfies its strictures.

Despite the deletion of Listing 9.09, a plaintiff still may be able to demonstrate that his

obesity, either alone or in combination with his other impairments, is of listing-level severity.

SSR 02-1p. However, substantial evidence supports the ALJ's determination that this plaintiff's

impairments fail to rise to a level which would meet or medically equal any other listing. Despite

plaintiff's claims, no doctor has opined that plaintiff's childhood impairments or combination of

---

[5] In addition to certain height and weight requirements, plaintiff must also have one of the following conditions in order to meet the criteria of Listing 9.09:

(a) History of pain and limitation of motion in any weight-bearing joint or the lumbrosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbrosacral spine; or
(b) Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or
(c) History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or
(d) Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or
(e) Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values specified in Table III-A or III-B or III-C.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 9.09 (deleted).

impairments medically equaled a listing. Furthermore, the record evidence establishes nothing more than the possibility that plaintiff's obesity may lead to musculoskeletal, respiratory, and cardiovascular problems in the future. See also discussion § IV(A), infra.

In the final step of the child's SSI sequential process, the ALJ further determined that plaintiff's impairments do not functionally equal a listing. The ALJ found plaintiff had a marked limitation in the fourth domain, moving about and manipulating objects, and a less than marked limitation in the sixth domain, health and physical well-being. As the ALJ determined plaintiff was not limited in the remaining four domains of functioning, he properly concluded that plaintiff did not functionally equal a listing and denied Lester's claim for child's SSI benefits. The undersigned reviews, in turn, the relevant evidence supporting Lester's level of functioning in each domain.

**A. Domain 1: Acquiring and Using Information.**

The regulations state that in the first domain, the Commissioner considers how well an individual acquires or learns information, and how well that information is used. Claimants with limitations in this domain may misunderstand words about space, size or time; have difficulty rhyming words or the sounds in words; have difficulty recalling important things learned in school the previous day; have difficulty solving mathematics questions or computing arithmetic answers; or speak only in short, simple sentences with difficulty explaining what is meant. 20 C.F.R. § 416.926a(g)(3).

In Lester's case, the ALJ determined that the record supports no limitation of functioning in the first domain. The ALJ found plaintiff's test scores to be within the normal range of intellectual functioning and his performance to be commensurate with others his age. Substantial evidence in the record supports this determination.

13

A psychological evaluation conducted on April 30, 1998 by Linda M. Shaner, L.P.C., to determine plaintiff's level of academic, intellectual and emotional functioning revealed that Lester's reading, spelling and arithmetic scores all fell within the average range of academic achievement. (R. 284) Although Lester reported being a fast reader, his reading rate was below average; however, his reading comprehension skills fell within the average range. (R. 284) Additionally, plaintiff's full scale IQ also fell within the average range. (R. 284) Counselor Shaner reported plaintiff had good verbal comprehension skills, as well as above-average to superior vocabulary, social judgment and common sense skills. (R. 285) His ability to utilize nonverbal reasoning skills was weak, however, as were his abilities to analyze and integrate spatial relationships and visually discern cause and effect relationships in social situations, in comparison to his strengths. (R. 285) Additionally, it was noted that Lester is apt to have difficulty performing tasks that require rapid eye-hand coordination. (R. 285)

While plaintiff argues he was unable to perform at the level of his peers, record evidence does not establish that plaintiff has marked limitations in the area of acquiring and using information. His vocabulary skills were noted to be superior, and his verbal IQ score fell within the upper limits of the average range. While his visual discrimination and reasoning skills were weak in comparison to his strengths, his full scale IQ fell within the average range, as did his reading, spelling and arithmetic scores. His reading comprehension skills were average in comparison to other second semester tenth grade students, his appropriate comparitors, though his reading rate was below average.

Furthermore, plaintiff reports having been in advanced classes except for mathematics and physical education. (R. 773-74) Though plaintiff failed to complete the tenth grade, he stated he left school because he was not permitted to remain at home with his mother after her

14

hysterectomy procedure, not because he had any significant barriers to learning. (R. 283) In all, substantial evidence supports the ALJ's finding that plaintiff had no limitation in the first domain.

### B. Domain 2: Attending and Completing Tasks.

In the second domain, attending and completing tasks, the Commissioner assesses a claimant's ability to focus and maintain attention; ability to begin, carry through and finish activities; the pace at which an individual performs activities; and the ease with which the activities are changed. 20 C.F.R. § 416.926a(h). Individuals with limitations in this domain may be easily startled, distracted, or over-reactive to sounds, sights, movement or touch; be slow to focus on, or be uninterested in, completing activities of interest; become sidetracked from activities or have a tendency to interrupt others; grow easily frustrated with tasks; or require extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i)-(v).

The ALJ determined that plaintiff had no limitation in the second domain, and substantial evidence supports that finding. The record is completely devoid of any indication that the plaintiff had trouble focusing or remaining engaged in activities, or that he was easily distracted. Plaintiff offers no evidence to support a marked limitation in the area of attending and completing tasks.

### C. Domain 3: Interacting and Relating with Others.

The third domain, interacting and relating with others, takes into account how well an individual initiates and sustains emotional connections with others; develops and uses the language of his community; cooperates with others; complies with the rules; responds to criticism; and respects and cares for the possessions of others. 20 C.F.R. § 416.926a(i). Individuals with limitations in the third domain may lack close friends, avoid or withdraw from

15

familiar people, become overly fearful about meeting new people and trying new experiences, have difficulty playing games or sports with rules, have difficulty communicating with others in conversation, or have difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. § 416.926a(i)(3)(ii)-(vi).

The ALJ determined plaintiff had no limitation in this area of functioning, as his consultative psychological evaluation indicated his interpersonal skills were quite good, and he was able to relate well to the examiner.  Substantial evidence supports this finding.  Indeed, the psychological evaluation completed on April 30, 1998 indicates that Lester was "very friendly, playful at times and humorous."  (R. 283)  He was willing to share information about himself, asked questions about the various tests, and commented throughout the testing.  (R. 283)  Testing revealed that his verbal comprehension skills were quite good, and that his vocabulary skills, social judgment and common sense skills were all above average to superior.  (R. 285)  He did not share any particular familial concerns with his examiner.  (R. 285)  Though both mother and son reported plaintiff was teased in school, Lester's mother testified that plaintiff has one close friend who has stuck by his side despite his weight issues.  (R. 749, 860-61)

Plaintiff has no trouble communicating, does not seem to have difficulty relating to others in conversation, and testimony indicates plaintiff had at least one close friend throughout his school days.  Furthermore, Lester was involved in activities such as football, basketball, and the band.  (R. 326, 390, 748, 794)  The record simply fails to establish a marked limitation in plaintiff's ability to interact with or relate to his peers and family members.  Thus, the ALJ's finding is supported by substantial evidence.

16

**D. Domain 4: Moving About and Manipulating Objects.**

In the fourth domain, moving about and manipulating objects, the Commissioner must assess an individual's gross and fine motor skills, determine how that individual moves his body from one place to another, and determine how well he manipulates things. 20 C.F.R. § 416.926a(j). Individuals with limitations in the fourth domain may experience muscle weakness, joint stiffness, or sensory loss, which interferes with motor activities; have trouble climbing up and down stairs or with balance; struggle with coordinating gross motor movements; have difficulty sequencing hand or finger movements; have difficulty with fine motor movement; or have poor hand-eye coordination when using a pencil or scissors. 20 C.F.R. § 416.926a(j)(3)(i)-(vi).

The ALJ determined plaintiff is markedly limited in the area of moving and manipulating objects, as a result of his obesity as well as his other impairments. Substantial evidence of record supports this finding.

Plaintiff's height and weight qualify him as an individual with "extreme" obesity.[6] This extreme obesity has a marked impact on his motor skills. According to plaintiff, his weight has constantly increased. (Pl.'s Br. 2) While he was able to play football in seventh grade, (R. 748), he soon found himself unable to continue participation in activities such as football, basketball,

---

[6] While Clinical Guidelines do not provide criteria for diagnosing obesity in children, SSR 02-1p states that the National Institutes of Health guidelines classify obesity in adults according to Body Mass Index (BMI), which is the ratio of an individual's weight in kilograms to the square of his or her height in meters. A BMI of 30.0 or above qualifies as "obesity," and obesity is further divided into three levels. Level I includes BMIs of 30.0 to 34.9, Level II includes BMIs of 35.0 to 39.9, and Level III or "extreme obesity," includes BMIs greater than or equal to 40.

Calculating Lester's BMI using various measurements cited in the record for his height and clearly puts plaintiff into the category of Level III obesity. (See Pl.s' Br. 2-3)

or running during physical education class. (R. 748-49) Though he played in the band, he was unable to march. (R. 794) Plaintiff also stated he could not make it to class on time, because he only had three minutes to get from one class to his locker to another class on the other side of school, and he simply could not move that fast. (R. 749)

Though markedly limited, plaintiff's ability to function in the fourth domain does not rise to the "extreme" level as defined by the regulations. 20 C.F.R. § 416.926a(e)(3)(i). While his movement is limited by his obesity, plaintiff has been able to participate in activities such as football and basketball. (R. 326, 390, 748) Plaintiff also played in the band for six years, despite the fact he could not march, (R. 794), and was active enough to ride go-carts. (R. 742) Doctors did not restrict his activities, (R. 336, 391), and in fact, suggested in 1995 that he increase his walking to no less than one mile per day. (R. 390) Dr. Freemark of Duke University Medical Center noted in a 1998 evaluation, "I am concerned that he may become confined to his home for fear of overstressing his body," indicating plaintiff was capable of more physical exertion than he allowed himself. (R. 380)

Additionally, plaintiff complained of shortness of breath and chest pain with minimal exercise, (R.235), yet Lester showed no signs of significant cardiac abnormality. (R. 239) At the time of an October, 1997 study, plaintiff was not taking any medication for his asthma. (R. 242, 246) Plaintiff's chest was reported to be clear bilaterally with normal breath sounds. (R. 238)

For these reasons, the undersigned finds the ALJ's determination that plaintiff's limitation in the fourth domain is marked, but not extreme, is supported by substantial evidence.

### E. Domain 5: Caring for Yourself.

Regulations define the fifth domain, caring for yourself, in terms of how well an individual can maintain a healthy emotional and physical state, how well an individual copes

18

with stress and environmental changes, and whether an individual takes care of his own health, possessions and living area. 20 C.F.R. § 416.926a(k). Individuals with limitations in the fifth domain may fail to dress or bathe themselves appropriately for their age, as a result of an impairment; engage in self-injurious behavior; fail to pursue spontaneous, enjoyable activities or interests; or experience disturbances in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3)(iii)-(vi).

Substantial evidence supports the ALJ's finding that plaintiff suffered no limitation in the fifth domain. Plaintiff complained of depression, but was not treated by a mental health professional or counselor. (R. 752) In addition, a counselor performing a psychological evaluation described him as "very friendly, playful at times and humorous." (R. 283) He was attentive and made appropriate comments throughout testing. (R. 284) There is no evidence to show plaintiff practiced any form of self-injury. Though plaintiff claims to have experienced suicidal thoughts, he has never made any type of suicidal gesture. (R. 283)

While plaintiff and his mother claim he was often teased by students for being "stinky," (R. 860), the record indicates his body odor was a result of Lester's tendency to sweat during the day, not the result of any deficiency in his ability to care for himself in terms of his personal hygiene. (R. 838-39) In addition, the record does not establish that plaintiff has trouble engaging in spontaneous activities or interests. He played in the band, played sports such as basketball and football, and drove go-carts. (R. 326, 390, 742, 748, 794)

The record does reveal, however, that plaintiff experienced disturbances in both his sleeping and eating patterns. Lester's sleep apnea is documented in the medical records as being merely a "slight case." (R. 746; see also R. 375) While his weight alone suggests dysfunctional eating habits, (R. 286), it does not prove that he had marked limitations in his ability to care for

himself. Plaintiff has been repeatedly instructed to watch his diet and increase his exercise, (R. 390, 391, 428, 429, 533, 662), yet his weight constantly increased over time. (See Pl.'s Br. 2) No doctor has opined that an impairment prevents Lester from being able to control his weight, or otherwise care for himself.

On October 2, 1995, Lester claimed to be running one mile each day in physical education class, and then walking another one-half mile at home, but when pressed on the issue, he said "I do as much as I can." (R. 390) During the same visit, plaintiff insisted he was staying on his diet and eating very little, but also stated he "believes his obesity is hereditary and that dieting will not be able to do any good." (R. 390) Consist with this statement, later office records of September, 2002 indicate plaintiff was drinking as much as ten, twelve ounce sodas per day, which equates to an intake of over 3000 calories from soda alone. (R. 661)

Substantial evidence of record supports the ALJ's conclusion that plaintiff's limitation in his ability to care for himself is not marked. Despite his dysfunctional eating patterns, plaintiff's belief that "dieting will not be able to do any good," (R. 390), reflects more of a lack of desire to properly nourish himself than a lack of the *ability* to do so. There is simply no indication that plaintiff has an impairment which interferes with his ability to care for himself.

**F. Domain 6: Health and Physical Well-being.**

Finally, in the sixth domain, the Commissioner considers the cumulative physical effects of physical and mental impairments and their associated treatments or therapies on an individual's functioning that were not considered in the fourth domain analysis. 20 C.F.R. § 416.926a(l). Individuals who are markedly limited in the area of health and physical well-being may suffer generalized symptoms, such as weakness, dizziness, agitation, lethargy, or psychomotor retardation as a result of their impairments; have somatic complaints related to their

20

impairments; suffer limitations in physical functioning as a result of treatment; suffer exacerbations of impairments that interfere with physical functioning; or be medically fragile and need intensive medical care to maintain a certain level of health and physical well-being. 20 C.F.R. § 416.926a(l)(4)(i)-(v).

The ALJ determined that plaintiff's limitations in the sixth domain were less than marked. The ALJ acknowledged periods of exacerbations of plaintiff's medical condition, but noted that Lester's symptoms responded well to medication management. (R. 33) The ALJ also stated that plaintiff's condition did not prevent him from engaging in at least some activities in school, including athletics and driving go-carts, as well as helping with his father's business and working on a dairy farm. (R. 33)

Substantial evidence of record supports the ALJ's finding that plaintiff's limitations in the sixth domain are less than marked. Tests run by the Division of Pediatric Cardiology at Duke University Medical Center showed no cardiac abnormalities. (R. 236, 239) Additionally, plaintiff's chest was clear with normal breath sounds. (R. 238) He was not given exercise or diet restrictions, and it was noted that his condition at discharge was good. (R. 236) A polysomnography study revealed plaintiff suffered from only a mild to moderate level of sleep apnea. (R. 240-44)

Though plaintiff complained of asthma, he stated to counselor Lin Shaner, L.P.C., during his psychological evaluation that the condition had ameliorated since he was a child. (R. 282) Additionally, plaintiff claimed that his asthma was controlled with his inhaler. (R. 172, 744) In 1997, plaintiff was not even taking medication for his condition. (R. 242, 246) Plaintiff has also stated that his high blood pressure was controlled with medication. (R. 172, 754)

After receiving a severe contusion to his left leg in a go-cart accident, (R. 742), his calf musculature was noted to be supple and he had fairly good range of motion of the ankle and toes without significant calf or leg pain. (R. 308) The hematoma of the proximal posterior calf appeared benign and the swelling had gone down. He was discharged from Twin County Regional Hospital with instructions to not bear weight on his left lower extremity and to elevate the leg and ice it. (R. 308) Images of his leg revealed no acute bony abnormalities. (R. 312) Additionally, there was no evidence of deep vein thrombosis. (R. 312)

Though Lester complained to Dr. Elmasry of neck pain in November of 1996, examination revealed he had full range of motion. (R. 326) X-rays of the lumbar spine showed no evidence of spondylosis. (R. 329) Despite claims of "head stuffiness," (R. 326), the images showed no evidence of sinusitis. (R. 329)

Plaintiff's obesity alone does not render his limitation in the sixth domain marked for purposes of child's SSI. Evidence indicates that during his youth, plaintiff was able to play football and basketball, (R. 326, 390, 748), play tuba in the band for six years, (R. 794), drive, (R. 751), race go-carts, (R. 780), and help his father at his transmission shop, (R. 777). Plaintiff was never limited in his ability to exercise, and in fact, was encouraged to increase his walking to a minimum of one mile per day. (R. 390) There is simply no evidence to show plaintiff's limitation in the area of health and physical well-being was marked.

In sum, the ALJ's determination that plaintiff does not functionally equal a listing is supported by substantial evidence in the record. No doctor has opined that plaintiff functionally equals a listing. Furthermore, the ALJ's finding is consistent with the expert testimony. In the first of two Childhood Disability Evaluations performed on Lester, state agency physicians Joseph Duckwall, M.D., and R.J. Milan, Jr., Ph.D., found plaintiff was markedly limited only in

his motor function. (R. 292) State agency physicians Howard Leizer, Ph.D., and Martha

Wunsch, M.D., later found plaintiff less than markedly limited in motor and social function

during the second Childhood Disability Evaluation. (R. 352) Both medical experts, Ira Wile,

M.D., and Charles Holland, M.D., present at plaintiff's May 12, 1999 administrative hearing,

opined that plaintiff neither meets nor functionally equals any listing. (R. 755-58)

Therefore, the undersigned finds that substantial evidence supports the ALJ's decision

denying plaintiff's claim for child's SSI benefits.

## IV

Plaintiff also claims the ALJ erred by denying his claim for adult's SSI benefits for the

period of January 1, 1999 through April 30, 2001. Plaintiff contends the ALJ failed to properly

consider his obesity, discounted the opinions of both Dr. Elmasry and Dr. DeBoe that plaintiff is

disabled, and found plaintiff's testimony concerning his limitations to be incredible. The

undersigned disagrees.

### A. Plaintiff's Impairments Are Not of Listing-Level Severity.

Plaintiff argues that he meets the requirements of Listing 9.09, Obesity. As outlined in

§ III, supra, Listing 9.09, was deleted from the regulations effective October 25, 1999, and will

not be applied to the case at hand.

However, the Commissioner may find that plaintiff's impairments rise to listing-level

severity if his obesity, taken in combination with his other impairments, meets the requirements

of any listing. SSR 02-1p. In this case, plaintiff claims that his combination of impairments

meet the requirements of Listing 1.00, Musculoskeletal System, Listing 3.00, Respiratory

System, and Listing 4.00, Cardiovascular System. (Pl.'s Br. 5-6)

23

Record evidence does not establish that plaintiff's impairments, even considered in combination, meet the requirements of any listing. Obesity is a risk factor for other impairments. SSR 02-1p. An obese individual does not necessarily have other impairments, but he may be at a greater than average risk of developing such impairments. SSR 02-1p. Such is true for the plaintiff in this case. Lester may have an above-average risk of developing musculoskeletal, respiratory, and cardiovascular problems as a result of his obesity, but evidence of record does not indicate that in the relevant time period, plaintiff suffered any impairment or combination of impairments that medically equals the above-referenced listings.

Though Dr. Elmasry noted plaintiff had the *potential* for low back pain and asthma, which would "potentially interfere with his job duties," there is no evidence establishing that, at the time in question, plaintiff had impairments that meet the criteria of the musculoskeletal, respiratory, or cardiovascular listings. Plaintiff complained to Dr. Elmasry of low back pain. (R. 428) However, x-rays revealed mild retrolithiasis of L5-S1 and "very mild disk space narrowing" at that level. (R. 428) No other abnormalities were seen. (R. 428) Plaintiff reported no radiating pain, and no weakness in any extremity. (R. 428)

Though he complained of ankle and left foot pain on March 15, 2000, plaintiff had full range of motion in his ankle and toes. (R. 420) After having an abscess removed from his left leg, (R. 461-64), a CT scan revealed no evidence of residual abscess or fluid collection, and normal underlying muscular and bony structures. (R. 475) Plaintiff returned to the hospital urgently after experiencing increased swelling and pain in his left leg, but his condition seemed to improve symptomatically with mere elevation of the leg. (R. 470) Follow up office notes indicate his wound appeared to be healing well. (R. 478)

24

Multiple examinations by Dr. Elmasry revealed regular heart rate and rhythm with no murmur or gallops, as well as a clear chest. (R. 385, 386, 387, 420, 423, 428, 429, 430) Plaintiff consistently denied chest pain. (R. 385, 386, 387, 420, 423, 428, 429, 430) X-rays taken on September 9, 1999 show a normal chest and clear lungs. Plaintiff's asthma was controlled by medication, and according to plaintiff, it seemed to have ameliorated during his childhood. (R. 413)

Plaintiff argues the ALJ did not fully develop the record in terms of Listing 3.02, Chronic Pulmonary Insufficiency. However, the record is void of any indication that plaintiff had a respiratory impairment that qualified under Listing 3.02.[7] While the ALJ does have a duty to develop the record, see Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), the regulations require only that the medical evidence be complete enough to make a determination regarding the nature and effect of the claimed disability, the duration of the disability, and the claimant's residual functional capacity. 20 C.F.R. § 416.913(e). In this case, the evidence provided was sufficient for the ALJ to make such a determination. Plaintiff has the burden of proving disability, 20 C.F.R. 416.912(a), and has not offered any evidence to show he suffers from or may suffer from chronic pulmonary insufficiency. As there is no evidence that the plaintiff met the requirements of Listing 3.02, the ALJ had no duty to further develop the record with respect to plaintiff's pulmonary function.

---

[7] As outlined in 20 C.F.R. part 404, appendix 1, Listing 3.02 is met if an individual suffers from chronic obstructive pulmonary disease, with forced values equal to or less than those listed in Table I; or chronic restrictive ventilatory disease, with forced vital capacity values equal to or less than those listed in Table II; or chronic impairment of gas exchange, as defined in the regulations.

25

There is simply no medical evidence of record to indicate that plaintiff had an impairment which, in combination with his obesity, medically equaled any listing. Substantial evidence supports the ALJ's determination that plaintiff's impairments do not rise to listing-level severity.

**B.      Drs. Elmasry and DeBoe's Opinions of Disability Are Not Entitled To Substantial Weight.**

The ALJ properly concluded that the opinions of Drs. Elmasry and DeBoe that plaintiff is disabled are not entitled to substantial weight under the treating physician rule. The Fourth Circuit gives great weight to the opinion of a treating physician, for such opinion reflects expert judgment based on continuous observation of a patient's condition over a prolonged period of time. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). However, the Commissioner is not bound by a treating physician's opinion. Mitchell, 699 F.2d at 187. The treating physician rule does not require that the testimony of a treating physician be given controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (citing Campbell v. Brown, 800 F.2d 1247, 1250 (4th Cir. 1986)). The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence in the record. Foster v. Heckler, 780 F.2d 1125, 1127 (4th Cir. 1986). If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In a letter to Lester's potential employer Kentucky Derby Hosiery, Dr. Elmasry opined that plaintiff has a "high potential for low back pain and asthma," which would potentially interfere with any job duties. (R. 422) Plaintiff offers this letter as evidence that plaintiff is disabled from all work. However, office notes from October 14, 1999 indicate that this letter was written to show that plaintiff was unable to perform the work required of him by Kentucky

26

Derby. (R. 423) Dr. Elmasry noted that the Kentucky Derby job description "includes lifting heavy objects as heavy as 60 lbs or more often. In addition, it may include some exertion and being on his feet all day and reasonable walking doing the job." (R. 423) Dr. Elmasry does not state that plaintiff cannot perform any job. Instead, records indicate he wrote this letter after contemplating the specific physical requirements of the Kentucky Derby job. The ALJ determined that plaintiff has the residual functional capacity to perform sedentary work, which requires Lester to lift less than ten pounds frequently and no more than ten pounds occasionally, and sit throughout the workday, with the option to sit or stand on occasion. (R. 39) The ALJ limited plaintiff to substantially lighter work than that required by Kentucky Derby. Plaintiff's reliance on Dr. Elmasy's letter is misplaced.

In a letter addressed "To whom it may concern," Dr. DeBoe opined that plaintiff is precluded from all work because of his inability to stand for more than ten minutes, lift more than twenty pounds, walk more than 500-1000 feet, and climb more than fifteen stairs. (R. 444) While Dr. DeBoe did treat plaintiff a number of times between April of 2001 and February of 2002, at the time he wrote this letter on September 15, 2000, Dr. DeBoe had only examined the plaintiff once before, on August 3, 2000. (R. 440)

Furthermore, though Dr. DeBoe did state in his letter that plaintiff "is not able to work at any job and will require 3 years of intense medical help to bring about a change in present health conditions," (R. 444), the ultimate determination of disability lies not with an individual's physicians but is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). In addition, the functional limitations described by Dr. DeBoe in the September, 2000 letter do not indicate that plaintiff is totally disabled. In fact, the ALJ's RFC

27

determination is not inconsistent with Dr. DeBoe's findings that plaintiff can lift no more than twenty pounds, walk no more than 500 to 1000 feet, climb no more than 15 steps, and stand no longer than 10 minutes. The ALJ determined that plaintiff could lift no more than ten pounds on occasion and less than ten pounds frequently, and sit during the day with the option to stand or sit on occasion. These findings as to plaintiff's functional limitations coincide with those of Dr. DeBoe. (See R. 37)

The opinions of Drs. Elmasry and DeBoe regarding disability are not entitled to substantial weight under the treating physician rule. Dr. Elmasry's letter to Kentucky Derby Hoisery was written to show that plaintiff could not meet the physical requirements of that specific job; the ALJ also found that the plaintiff could not perform a job as physically demanding as that of Kentucky Derby Hoisery. Instead, the ALJ properly determined based on testimony of the vocational expert that plaintiff could perform less demanding work, namely sedentary work, such as that of a bench worker and parts inspector. (R. 39)

Though Dr. DeBoe opined that plaintiff is disabled from all work in a letter written in September of 2000, the clinical findings noted in the letter do not establish that plaintiff is disabled from all work. Instead, those findings indicate plaintiff is quite limited in his ability to work, and the limitations expressed by Dr. DeBoe are not inconsistent with the findings of the ALJ. Thus, the ALJ's determination that neither physician's opinion of disability is entitled to substantial weight is supported by substantial evidence in the record.

### C. The ALJ's Credibility Determination is Supported By Substantial Evidence.

Plaintiff also argues that the ALJ must have discredited the claimant's testimony as to his condition in order to find plaintiff capable of sedentary work. (Pl.'s Br. 11-12) However, the ALJ found Lester's alleged symptoms to be "credible to the extent they are construed to mean

28

that claimant is unable to engage in any work activity that would require him to lift heavy weights or stand for vocationally significant periods of time," in terms of the SSI analysis. (R. 36)

In reviewing cases for substantial evidence, courts must not undertake to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). It is well settled that credibility determinations are in the province of the ALJ, and that courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ is not required to accept all subjective testimony at face value. See Hays, 907 F.2d at 1456. Because the ALJ had an opportunity to observe plaintiff's demeanor and to determine his credibility, his observations are to be afforded great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Plaintiff's assertions that the ALJ improperly weighed his credibility are without merit. Plaintiff's symptoms, including pain, were considered by the ALJ in making an RFC determination. (R. 36) The fact that the ALJ found Lester capable of only sedentary work, lifting no more than ten pounds on occasion and sitting throughout the workday with an option to stand on occasion, proves that the ALJ took into account plaintiff's subjective complaints and testimony as to his physical limitations.

In his brief, plaintiff argues the RFC assessment completed on January 7, 1999 is completely unrealistic. (R. 355-62; see Pl.'s Br. 13) In this assessment, Martha Wunsch, M.D., found the eighteen year old plaintiff capable of lifting fifty pounds occasionally, twenty-five pounds frequently, and standing, sitting or walking six hours in an eight hour workday. (R. 356) However, the ALJ did not adopt the contours of this RFC assessment in his determination of

plaintiff's physical capabilities. Indeed, the ALJ assessment of Lester's RFC was much more restrictive than that of Dr. Wunsch. The ALJ limited plaintiff to lifting no more than ten pounds and gave Lester the opportunity to sit or stand on occasion. (R. 37) Clearly, the ALJ found plaintiff's complaints credible to the extent that he is limited to sedentary work.

The evidence in the record supports the ALJ's decision that the plaintiff had the RFC to perform the jobs about which the vocational expert testified. The ALJ's credibility determination was proper.

V

Accordingly, the decision of the Commissioner is affirmed, and defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:**     This 12 day of July, 2006.

Michael F. Urbanski
United States Magistrate Judge

30